May it please the Court, Catherine Tassinari representing Kathy Talley in this case. We're at step 5 of the sequential analysis in this case, as the ALJ already found that the plaintiff can no longer perform any of her past relevant work, including her caregiver job. So the question now becomes, can she work some alternate job 8 hours a day, 5 days a week in the national economy? The plaintiff submits that the record shows that she cannot. And I'd first like to go to the failure of the ALJ to address the treatment records and the opinion of Pam Jones, the treating therapist. As the district court pointed out, the ALJ did not address these records directly. The ALJ addressed other records from the mental health, but not Pam Jones's records. The failure to address these records infected the ALJ's decision in several ways. First of all, he found that Dr. Perry had represented plaintiff in a less functional light. But a review of these records from Pam Jones shows that she continued to have problems that she treated steadily for quite a period of time. November 2005 to June of 2006 were the records that were in there. And so the ALJ made a couple mistakes. First of all, he found that she was disinterested in treatment and hadn't received treatment, while Jones's records show that she had, over a long period of time, steadily obtained treatment. The record shows that she continued to have problems that weren't episodic, as the ALJ said they were. And it caused the ALJ to misread Dr. Perry's report. The other thing that the record showed that there were a number of things the record showed that hadn't been addressed. For one thing, it showed some problems with her medication. It showed problems with psychological problems from childhood that hadn't been addressed elsewhere. And it showed some of the difficulties that she had in relating to others. So plaintiff submits that the failure to address the therapist's records were not harmless. And if the ALJ had considered them, he would have had to look at this case very differently. Did he have any discretion? I mean, she was an other source, if I'm not mistaken. That's correct. Under the Social Security ruling 0603P, it's a newer ruling that the agency has written, and it's very strong in saying that not only should the ALJ be considering the treatment records of Jones, but also her opinions. I have in my opening brief highlighted the opinion language in there, and that's a pretty strong language because I think until this ruling came out, we've been unclear about how much credit we should be giving to an other source. But this ruling states quite clearly that a strong amount of consideration should be given. But it's not in tandem with the same kind of deference of the treating physician. No, Your Honor. But in this case, there's only one acceptable medical source who examined the claimant, and that was Dr. Perry. Right. So the ALJ, by disregarding Dr. Perry and then by not even reviewing or considering the treating therapist, has really ignored all of the significant evidence in the records. So I don't I don't want to pick on a verb, but I'm not sure it's fair to say the ALJ disregarded Dr. Perry. I mean, he discussed Dr. Perry's testimony. He discounted it, and there may be appropriate reasons to criticize that. But it's not like it wasn't there in the same sense that Pam Jones' testimony doesn't seem to be there. You're right, Your Honor. If we agree with you that the ALJ should have considered or given more consideration to Dr. Perry's testimony and to the what was the other one? Were those letters or some kind of written testimony, right? The treating therapist? Yeah. It wasn't testimony. It was a written testimony. This was treatment records and two opinion, two letters. All right. Yeah, letters. So if we agree with you that the ALJ should have considered those, then what do we do? Do we send them back for the ALJ to look at that testimony and then to make a judgment on it? Normally, I'd ask you to credit it. But because the ALJ didn't consider it whatsoever, I think a remand is the appropriate remedy. Right. In other words, what I'm getting at is, and maybe you're getting at the same thing, there is something in your brief about remanding for the, you know, calculation of benefits. But the correct thing is to have the ALJ consider this testimony, right? I think the Court could, if it wanted to, credit it. And there are a number of cases. I think in the Schneider case, the Court credited three laywitnesses and awarded benefits. But in this case, I think the ALJ should have considered it.      But I think it's just a question of how does the ALJ view this testimony? Because it's misogynist. It's misogynist under our law. Right. And here, the problem isn't the problem that he didn't fully consider the therapist's testimony. It didn't. He did not. And the district court cleared that up. So we don't have that under discussion. The district court held that or found that the ALJ had not addressed the treating therapist records. Well, you know, the district court said our review is de novo, so it doesn't really make any sense. All right. We look at what the district court did, but we do it de novo. But I think it is clear that the ALJ did not address the records. Do you want to save some time for me? I will save some time. Okay. Thank you. Good morning. Jamala Edwards representing the commissioner. I'd like to start by addressing some of the issues that Ms. Tosinari has brought up, and that's, first of all, the therapist's opinion, Ms. Jones. Now, really the only issue we have here is that the ALJ did not mention Ms. Jones by name. However, the record and the decision shows that the ALJ considered the records from Ms. Jones and from the Douglas County Mental Health Clinic where she practiced. There's numerous citations in the decision to these clinic practice records. And, in fact, the ALJ incorporated the credible limitations that Ms. Jones opined. In fact, he put in the RFC, preclude work with the general public and with complex tasks.  The ALJ did not mention Ms. Jones by name, even though at the time of the opinion, Ms. Jones had only been treating plaintiff for four months and also was largely, her opinion was largely the self-reports of plaintiff, which the ALJ probably found were not credible based on several factors. Now, should ---- What was it the ALJ found not credible? I take it you don't mean it was Ms. Jones' conclusions because those weren't specifically commented upon, although if there are references you can point me to that show where he picked up the substance of what she concluded, that would be useful because I haven't I went through here and I just simply didn't see any reference to what the therapist had reported. Well, the ALJ's decision refers to Exhibit 11F on several of the pages. And 11F is the exhibit that encompasses a lot of Ms. Jones' treatment records from Douglas County Mental Health. And I was trying to point out as an example that the RFC that the ALJ found had two of the limitations that Ms. Jones had pointed out in her opinion. So it seems reasonable that even though the ALJ did not state Ms. Jones said this, he considered it. Even though he probably had germane reasons to reject her opinion based, you know, as an other source, he could use germane reasons, you know, based on the fact that Ms. Talley had been shown to be non-credible in the record. And the credibility assessment showed that she did work as a caregiver during the relevant time period. She administered critical injections to her clients. She was able to do the cleaning, mopping, washing dishes, doing the laundry at these clients' homes. And she even worked at cleaning houses during the relevant time period. She improved with medication, but she failed to appear at numerous medical appointments. And when she called, because sometimes she didn't call at all, she just didn't show up, she said she had work and social commitments that prevented her from attending the sessions, which included going on trips with her husband and having her work scheduled to attend. She didn't say, I can't attend because my anxiety is too bad or any other factors. In fact, one therapist discharged her from treatment because she'd only attended one session and canceled so many. Nevertheless, that therapist still opined that her prognosis was fair, given her ability to cope fairly well with her drama-filled life, you know. And that's what the ALJ said was episodic, was that she did have some flares of her anxiety, but they were usually in response to normally stressful type of situations. Her husband being on the road for a long time, her son having difficulties using drugs and getting kicked out of the house and these different things, and with financial difficulties. You know, she had looked into filing bankruptcy. And these were all stressful situations that everyday people would have a fair amount of anxiety in response to. But everyday people are, in theory, at least able to cope. I mean, the problem with employment is that you can't necessarily shape the employment around the times that are good times. And this is a woman who plainly had better times, but she also had worse times. As I work through here, it seemed to me that perhaps the strongest reason given for discounting or not accepting the conclusions or reports of Dr. Perry had to do with the inconsistency between what he reported and the long previous work history that she had in the state of Washington. I was trying to work that through. Given that the ALJ ultimately concluded that she was not able to perform any of her past relevant work, including that work in the state of Washington, does that inconsistency really tell us anything about her condition today? I mean, it may well be the case that the person that Dr. Perry appeared to be opining about couldn't be the same person that worked so many years before. But if the ALJ concludes that she can't do that work today, then maybe Dr. Perry's testimony or conclusions can't be discounted, simply because previously she was able to work when today she can't. Well, I think that's one of the reasons the ALJ gave for discounting Dr. Perry. And I think it does show that things such as the childhood trauma that she had maybe didn't affect her, you know, during her long previous career. However, the jobs that the ALJ found did take into effect her new impairments and gave the claimant every benefit of the doubt. And, you know, the caregiver position was at a greater physical capacity. And so the ALJ said, okay, I'm going to give you unskilled jobs that you can do based on looking at the entire record. Now, Ms. Tessonari said, well, Dr. Perry's the only acceptable medical source in the record, the only other opinion besides Ms. Jones. Well, that's simply not true. There is many, many treatment records from treatment doctors, therapists, starting back from 2001 that did not opine that she was disabled and, in fact, said I'm not going to give you any more Xanax. You're taking it at an excessive level, and we need to discuss this. And she said, well, no, I'm not going to discuss this. I'm just going to change doctors. And she changed doctors numerous times. And, in fact, she became agitated when the physician assistants would not fill out the disability forms for her. And she told one physician assistant that my doctor said that I can't work anymore, so can you fill out this form? Like your supervising doctor said I can't work, fill out this form. The record doesn't show that that doctor said that. So, you know, the ALJ had a lot more to base his opinion on than just these two, Dr. Perry and Ms. Jones. Now, we would maintain that the only error that happened here was that the ALJ did not mention Ms. Jones by name. And the plaintiff has the burden of showing that that error was harmful to her. Well, I don't think that she can do that here. The ALJ incorporated the limitations, the credible limitations, into the RFC and considered all the treatment records from this therapist and the assessment from Dr. Perry. Therefore, harmless. Okay. Okay. Thank you. Are there any more questions? No. Thank you. Your Honors, on the issue of these other doctors conflicting with Dr. Perry, I find only one psychologist has examined the claimant. There are a lot of treatment records from nurse practitioners and some counselors, but there's only one psychological evaluation. Only one doctor has tested the claimant. Coming up with some valid testing. So I really don't see how Dr. Perry is contradicted. And usually we have a ‑‑ if we have a psychological evaluation, then the state agency will review that and comment on it because they can see the testing and so forth. That's what we see in the normal case. But in this case, the agency did not review Dr. Perry's report. And so any comments they made were done before they saw any ‑‑ without seeing any kind of testing. The other thing, just to address a couple things, I did see, which I had not seen before, that the ALJ referred to Exhibit 11F8. That's a report that Jones wrote very early on in her treatment, and the ALJ cited that to show that the claimant had a job. But after that, there's no discussion of any of the treatment that she received from Pam Jones. But there are a number of other references to 11F, which I haven't carried with me. Are they to other parts of that file? They're the period before she started treating with Jones, mostly with Sandra Willett. And also to address the issue of the work history, I think it's a ‑‑ Let me just say before we move on. Yeah. Under that regulation that you were talking about a moment ago. The social security ruling. The ruling, does the ALJ have to specifically address the other source opinions? It says, should address the other source, is what the ruling says. So, and just on the work history, the record shows that in eight of the last 15 years before she applied for benefits, she either had zero income or less than $5,000 in income each year. So while certainly it showed some ability to work, I would suggest it didn't show a great deal of ability. Thank you. Tally versus Astruz submitted. Thank you, counsel.
judges: Tashima, Paez, Clifton